Rochester District Court
No. 2007-597

GREAT TRADITIONS HOME BUILDERS, INC.

v.

MARIE O'CONNOR

Argued: May 21, 2008
Opinion Issued: June 13, 2008

*Casassa and Ryan*, of Hampton (*Daniel R. Hartley* on the brief and orally), for the plaintiff.

*Hanlon & Zubkus*, of Rochester (*Robert A. Zubkus* on the brief and orally), for the defendant.

GALWAY, J. The plaintiff, Great Traditions Home Builders, Inc., appeals the decision of the Rochester District Court (*Cappiello*, J.) dismissing its eviction action against the defendant, Marie O'Connor, for failing to satisfy the statutory notice requirement. *See* RSA 540:2, III (2007). We affirm.

The following facts are supported by the record. The plaintiff owns a 24-unit apartment complex in Rochester. The defendant resides within the complex as a tenant at will. On June 1, 2007, the plaintiff served the defendant with an eviction notice after the defendant made several allegedly "false and slanderous" accusations against Frank Chiaramitaro, Jr., the president of Great Traditions Home Builders, Inc. Specifically, the defendant had informed at least two tenants of her belief that Chiaramitaro had entered her apartment when she was not at home and taken items. The eviction notice specified these statements as the basis for the eviction, *see* RSA 540:3, III (2007), and required the defendant to vacate her apartment by July 1, 2007.

The plaintiff filed this eviction action after the defendant did not vacate her apartment by the prescribed date. A hearing was held on August 3, 2007, at which the defendant moved to dismiss. The defendant argued that the plaintiff had failed to satisfy the notice requirement set forth in RSA 540:2, III. That statute provides, in pertinent part,

> If the grounds for eviction is other good cause as set forth in paragraph II(e) of this section, and such cause is based on the actions or inactions of the tenant . . . the landlord shall, prior to the issuance of the eviction notice, provide the tenant with written notice stating that in the future such actions or inactions would constitute grounds for eviction.

RSA 540:2, III. The trial court granted the defendant's motion to dismiss. This appeal followed.

The plaintiff does not dispute that the eviction notice is for "other good cause" based upon the defendant's actions; that is, the statements against Chiaramitaro. The plaintiff also acknowledges that it did not provide the defendant written notice pursuant to RSA 540:2, III prior to serving the eviction notice. On appeal, however, the plaintiff argues that RSA 540:2, III should not apply given the facts of this case, or, in the alternative, that the trial court's interpretation leads to an absurd result, and, therefore, should not be upheld.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Chesley v. Harvey Indus.*, 157 N.H. 211, 213 (2008). We first examine the language found in the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Cayten v. N.H. Dep't of Envtl. Servs.*, 155 N.H. 647, 653 (2007). However, we will not interpret statutory language in a literal manner when such a reading would lead to an absurd result. *Id.* We review the trial court's interpretation of a statute *de novo. Id.*

The plaintiff first argues that the trial court erred in applying RSA 540:2, III to this case because the defendant's actions caused harm that could not be cured by any "future" action or inaction on the part of the defendant. The plaintiff essentially argues that the need to notify or warn the defendant against her actions is nullified under these circumstances because the damage to Chiaramitaro's reputation is already done. The plaintiff misinterprets the statute.

█ The plain language of RSA 540:2, III is clear and unambiguous. This statute makes prior written notice to the tenant *mandatory* if the grounds for eviction fall under the "other good cause" provision of RSA 540:2, II (2007), and such cause is based upon any action or inaction by the tenant. *See In the Matter of Bazemore & Jack*, 153 N.H. 351, 354 (2006) (general use of "shall" makes provision mandatory). The plain language does not, as the plaintiff would have us do, weigh the amount or type of damage resulting from the tenant's actions or inactions in applying the statute. It does not consider whether that damage may be "cured," as the plaintiff describes it, by some future action of the tenant. It simply requires that a tenant be notified that his or her actions will be grounds for eviction, in the future, should they continue. The plaintiff's interpretation of the statute requires that we create an exception based upon the type of damage suffered by the landlord; that is, whether the damage is correctable or not. We will not interpret the statute to create such an exception where the legislature has not seen fit to do so. *Nenni v. Comm'r, N.H. Ins. Dep't*, 156 N.H. 578, 581 (2007).

█ Here, the plaintiff acknowledges that its eviction notice was brought under the "other good cause" provision of RSA 540:2, II and was based upon certain actions by the tenant/defendant. Regardless of the fact that the damage it allegedly suffered was an intangible harm perhaps incapable of repair, the circumstances of this case fall squarely within RSA 540:2, III. Because the plaintiff admits that it did not provide the required written notice to the defendant prior to serving its eviction notice, we cannot conclude the trial court erred in dismissing its eviction action.

The plaintiff next argues that the trial court's interpretation of RSA 540:2, III leads to an absurd result. It asserts that it may send a notice consistent with RSA 540:2, III, and subsequently serve the eviction notice, without any additional actions or inactions on the part of the tenant. We disagree.

As we have already stated, RSA 540:2, III requires that a landlord provide a tenant with written notice that his or her actions, *in the future*, would be grounds for eviction, should they continue. This alerts the tenant to the potential consequences of continuing that conduct, prior to the

tenant's ultimate loss of his or her home. Under the plaintiff's interpretation, a tenant could receive the written notice prior to an eviction notice, cease the offensive action or inaction upon receipt of that notice, and still be evicted based solely upon the completed past actions. As the plaintiff points out, however, under this interpretation the written notice and subsequent eviction notice would be inconsistent, as the written notice would indicate that "such actions" would be grounds for eviction "in the future," and yet, the tenant would be served with an eviction notice based upon the past acts.

The plaintiff's interpretation fails in several respects. First, the plaintiff's interpretation ignores the legislature's use of the phrase "in the future." The plain and ordinary meaning of this phrase signifies a legislative intent to require some additional action or inaction on the part of the tenant, subsequent to the notice, prior to being evicted for those particular types of actions. Moreover, the legislature's use of the term "such actions" provides further evidence that the written notice is intended to reference different, subsequent actions than those that prompted application of the statute.

More significantly, the plaintiff's interpretation is inconsistent with the purpose of the statute. A written notice warning the tenant against certain actions serves no purpose if the landlord could immediately evict based solely upon those past actions. The required notice would be superfluous, as the tenant would, in actuality, receive no warning or opportunity to cease the action prior to losing his or her home. It is well settled in our jurisprudence that "[t]he legislature will not be presumed to pass an act leading to an absurd result and nullifying, to an appreciable extent, the purpose of the statute." *Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-12 (2006).

■ Furthermore, the plaintiff's interpretation is inconsistent with the statutory scheme. RSA 540:2, II, sets forth several grounds for eviction of a tenant of restricted property, like the plaintiff's property, that do not require a landlord to provide prior written notice. *See* RSA 540:2, II. These include substantial damage to the property, failure to pay rent, and failure of the tenant to comply with a material term of the lease, among others. RSA 540:2, II (a), (b), (c). The legislature further provided that, even under the "other good cause" provision, the cause for termination "need not be based on the action or inaction of the tenant," but may include legitimate business or economic reasons that do not require prior written notice to the tenant. *See* RSA 540:2, V (2007). However, as for otherwise unspecified actions or inactions by a tenant amounting to "other good cause" for eviction, the legislature explicitly requires prior notice. Read in the context of the statute as a whole, RSA 540:2 suggests a legislative intent to provide

notice to a tenant as to what constitutes grounds for eviction, either by specific reference in the statute, or by written notice prior to eviction, if eviction is sought through the "other good cause" provision for actions or inactions of the tenant. In this case, while the plaintiff is free to pursue a tort action against the defendant for her alleged slanderous statements, it may not evict her without providing the required statutory notice followed by further "such actions" by the defendant. If the legislature did not intend this broad application, "it is free to amend the statute[ ] as it sees fit." *In the Matter of Fulton & Fulton*, 154 N.H. 264, 268 (2006) (quotation omitted). Under the plain language of the statute, the trial court's interpretation does not lead to an absurd result.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.